And we'll move to our fourth case this morning, Donald Gaddis v. Jason Watts. Mr. Veyer, come on up. All right. Okay. May it please the court and good morning, counsel. My name is Brian Veyer. I'm here on behalf of Officer Jason Watts in this matter. And this case fundamentally comes down to whether or not younger abstention was warranted in the lower courts, more specifically whether the district court was correct to deny younger abstention here. As you know from the briefing, that triggers a crucial predicate jurisdictional question, and specifically whether the denial of younger abstention is something that can be brought to this court's attention in the first place. We have spent briefing arguing that it is immediately appealable under the collateral order doctrine first articulated in Cohen. And I believe that once the jurisdictional thicket, if you will, can be navigated, there's open field on the other side of that inquiry that shows that younger abstention is clearly warranted in this context. I anticipate, given the crucial nature of jurisdiction, that most of your honor's attention and concern is on the jurisdictional question. So I'll focus my argument there. So as this court knows, the collateral order doctrine has three elements. And I think the parties agree that only one of those elements is in dispute here, that element specifically being whether the issue in question here, the denial of younger abstention, is effectively unreviewable unless it is immediately appealed on a collateral basis. To that effect, it is Officer Watts's position that something is only effectively reviewable if it is. Let me walk it back. It's better to explain it this way. Something effectively reviewable does not mean merely that something could potentially or technically be appealed after a final judgment. Theoretically, everything is appealable after a final judgment, correct? Collateral orders include absolute immunity, qualified immunity, double jeopardy. These are theoretically things that could be appealed after a final judgment if that was all the standard required. Instead, what the Supreme Court articulated first in Cullen and has consistently held, leading up to cases from this century like Will v. Halleck, is that in addition to, it's not a matter of technical appeal, it's a matter of the ability of, is the issue in question speaking to some higher public interest or some interest of a higher order that is just too important to let wait until after a final judgment. And as Officer Watts's position, that younger abstention, being concerned about the inherent balance of interaction between federal and state co-equal judiciaries, first articulated as our federalism, a concept of our federalism by Justice Black and Younger v. Harris in 1971, is such an interest that it's too important that it cannot wait until after a final judgment has been ordered on the merits. Because at that point, as this court noted in Jones v. Clark, a qualified immunity case, the damage has been done. The federal court has already had an opportunity through depositions or discovery procedures that aren't available in trial court, for example, to interfere with the underlying state criminal prosecution. This damage could only be undone if it can be appealed immediately. You can't, excuse me, a post-final judgment appeal or review of younger abstention does not undo the damage that's done to the state court. So it's not a remedy to the federalism issues in this case to say that we can take the federal case back if it turns out abstention was warranted, the damage is done to the state court. Your Honor, you look like you have a question. I do. Please. The courts that have addressed this issue are uniformly against your argument on this third aspect of the collateral order doctrine inquiry about whether the issue becomes effectively unreviewable after final judgment. You know, there's perhaps reason to question that, but we would be running up against a pretty solid block of out-of-circuit case law. You would. And so we have not, so Officer Watts has not hidden that fact. Understood. You've been very forthright about it. And, of course, that is an understandable question. And I'm glad you mentioned that because it let me speak to what some of those other cases are doing. You're right that there is authority that says that for the third prong of Cohen, the denial of younger abstention can be reviewed after the fact, and that's fine. What those courts tend to do is one of two things, and ultimately the punchline is that I don't think they're really rolling up their sleeves and engaging in the analysis to see whether the younger, specifically federalism, concerns about comity and the interaction of state and federal judiciaries is being done. So it seems like those courts take one of two approaches. One of them, you see this, for example, in the Sixth Circuit case of Somerville. I think it's Lace. I might be mispronouncing that. But that 2006 Sixth Circuit case where the court essentially hand waves away the third prong and says, well, of course, younger can be checked after a final judgment. It can be so can a lot of other things. We're done here. And that's about the level of analysis. It's not really doing the work. And then the second thing that happens, and this is most prevalent in a consolidated Salish, which is not an easy case name to say, there is that you have a federal court that does do some of the analysis, but Salish, which is the Ninth Circuit opinion from 1994, if memory serves, says, well, you know, the federalism and comity concerns just aren't at issue in this specific case because we already abstained under Pullman, and so therefore there is no interaction or disparity or anything between the two courts. Why that's a second approach is because then what you see in the Second Circuit, so for example, the Tarrin case from the Second Circuit, is that they cite consolidated, confederated Salish for this concept, like, oh, you know, comity, federalism, that's not concerned. And they cite that kind of out of context as if just generally and categorically this third prong can never be satisfied for younger. Really what that Ninth Circuit case was saying is that here, as in for that specific circumstance, it's not implicated because Pullman abstention was already applied. Your Honor, you'll have to give another question. I think you're right in your characterization of that confederated Salish case and the reasoning there, and all of the other circuits that have basically followed that case have not really done any independent reasoning. This is not a pure younger claim. The federal court is not being asked to enjoin the state proceedings. It falls within the younger doctrine, at least for analytical purposes, because there is an ongoing state criminal proceeding, and that's the core of younger. But the relief that's being requested is damages, as far as I understand, right? That is correct, yes, Your Honor. And so the interference and damage to the federalism and comedy concerns that you've raised is less acute than in a pure younger case where the federal court is being asked to enjoin the state court proceedings. I think it's fair to say that it's reduced from a, to use your term, a pure younger case. Obviously no one is seeking to enjoin the criminal statute that's actually being enacted here. So you're right that we're a couple notches down from that. But I think the circuit in the Simpson v. Rowan case, which I believe was in 1995, said this isn't in the context of collateral review. This is just in the context of whether younger is implicated at all. In a Section 1983 case for damages, there this circuit said it's obvious, quote-unquote obvious, that the potential for interference between the state and the federal court is possible. And it emphasizes that opinion in kind of conditional language. These issues may happen. These issues could potentially occur. And because of that potential, what may happen, the Simpson court concluded that Section 1983 damages do still implicate younger. So you're right. That is a couple notches down. Of course this isn't the purest, strongest expression of younger, but still obvious that there are younger concerns that warrant consideration. And the interference consists in taking depositions of the same witnesses who will be called to testify in the criminal proceeding. I think that's part of it. But the Simpson court actually went a little bit farther. If I may just briefly, because I do want to save a minute for rebuttal, but to your point directly, obviously the state of Illinois has created a pretty complex system of criminal procedures about this is how the state has decided it wants to prosecute beyond a reasonable doubt that an individual should be convicted by a jury of their peers. And so if you allow that criminal defendant to then go to federal court and use federal discovery, that's the interference that I was referring to and you asked me about. But Simpson itself actually didn't necessarily talk about that. Simpson itself was focused more on, for example, in Simpson the conviction had already occurred. It was being appealed before the Illinois Supreme Court at that time. And the Seventh Circuit said, look, maybe we make a judgment, we the federal court make a judgment, and we say that, for example, there was a false arrest here. And then maybe the Illinois court is going to look at our conclusion, feel kind of skewed in their own analysis of how they're supposed to consider the constitutional circumstances surrounding the arrest or the conviction itself. And so Simpson itself already laid some of the groundwork of what some of the concerns were as well from a younger standpoint. If you have a question, I'm happy to speak to it, but otherwise I would refer you to my time to rebuttal. That's fine. Thank you very much. Mr. Dunham. Thank you, Your Honor. I'd like to get to the merits first. May it please the court. I'm representing Donny Gaddis. My name is Darryl Dunham. In their reply brief, Officer Watts asked the court to take judicial notice of some documents that were filed in the criminal case. I'd like to refer the court to page A3 of their appendix. It's important for the court to understand there were two charges brought against my client. One was a felony charge on unlawful restraint, second, disorderly conduct. Argument is being made these are essentially the same charges. Absolutely not true. The argument is made in the reply brief that the victim in the felony case, Mr. Hall, he was going to be an important witness or will be a witness in the disorderly conduct case. Absolutely not true. Mr. Hall has absolutely no testimony to give. He has nothing to say about the disorderly conduct case. Why do I say that? You look at the information, page A3. Counsel, your client was arrested for both offenses. Say again? Your client was arrested for both offenses at the same time. That is correct, Your Honor. Right. So if there was probable cause for the disorderly conduct offense and the Illinois criminal court so finds or he's convicted on the merits of that charge that necessarily includes probable cause, then there's nothing wrong with this arrest, and that decimates your claim. I would disagree, Your Honor, and here's why. If you look at the complaint, in paragraph 28 of the complaint, I allege that when the felony cases were dismissed, the bail was returned to my client. And he spent three days in jail. Now, if there was probable cause to keep him in jail for three days, then they would not have returned the bail. My point is, and frequently in the disorderly conduct in Illinois, it's a factual question. I'd be delighted to present this in front of the jury  Frequently in these low-level misdemeanors, what they do is they just issue a ticket. Understood. And my client shows up for court, and frequently there is no bail required at all. In this case, the felony charges were dismissed, bail was returned. That's what we allege in the complaint, and that's what we can prove happened. And the jury certainly would be able to infer, conclude, that if there was no probable cause for the felony case, my client would not have had to post bail, and he would not have spent three days in jail where he posted bail the following Monday. And so we would be delighted to have that fact brought to the attention of the jury. And I don't think it's something that the judge should be permitted to decide. I think that's for the jury to decide. If you look at A3, the victims of the disorderly conduct case is alarm and disturb Dorothy McCombs, who is not the victim in the felony case, Your Honor. And then if you look at page A6 of their appendix, it goes into great detail about how my client allegedly restrained, Mr. Hall, in his own driveway, my client's driveway. Mr. Hall was parked in my client's driveway. And so they properly concluded, look, there's no unlawful restraint here. And then it goes into detail, this is Officer Watts' affidavit, about why it was that McCombs was disturbed. Nowhere in this affidavit of probable cause does it mention anything about Mr. Hall giving any information about how he could be a witness about how disturbed Ms. McCombs was. Well, they were all present at the scene, and so they're all witnesses, right, this whole group of neighbors? I don't think that there's anything in this affidavit of probable cause that would indicate that. Just because they're not mentioned in the affidavit doesn't mean they weren't there. I understand from your complaint that all these people were there because you sued them all. Well, yes, but we're here on a motion for abstention, Your Honor. The burden of proof as to the facts and the underlying facts of that is not on us, it's on them. We don't prove anything at this stage. We just look at what you've alleged to see if your case is going to interfere with the state case. Fair enough, Your Honor. I don't disagree with that at all. But then how can we make inferences, given this record, that Mr. Hall was going to be a witness with regard to anything with regard to disorderly conduct? You sued him. You said he was there, and they were all ganging up on your guy. That's the rest of this. This is a neighborhood dispute. It resulted in one felony charge and one misdemeanor disorderly conduct charge. The felony charge has been dropped. The disorderly conduct charge remains pending. Your case here is all bound up with the state case. We have the jurisdictional issue that you haven't addressed yet. I'm not bringing any action with regard to disorderly conduct. They ganged up on him. You're contesting the arrest. You're saying there's no probable cause for the arrest. If there's probable cause to arrest for disorderly conduct, it's a good arrest, and your claim fails. Your Honor, I think that the damages were the incarceration. He certainly has a constitutional right not to be incarcerated without probable cause, and the incarceration was solely tied because they released the bail. If it was a disorderly conduct, he would have been given a ticket. He wouldn't have been incarcerated at all. He's got a constitutional right not to be incarcerated unless there's probable cause. The reason he was incarcerated was for the felony. There wasn't any probable cause on the felony, and that's what our claim is. And certainly at this stage, we should be able to pursue that. As is pointed out, the discovery here is very scant. My point is there's nothing in this record that Mr. Hall is ever going to be a witness on the disorderly conduct charge, so, therefore, there's no interference, there's no violence for letting the district court to go forward with this claim as she wants to do. It isn't going to do any violence at all whatsoever. So you don't want to depose any of these witnesses that will be witnesses in the state case? Set aside Hall. What I'm saying is that any deposition that I would take of Mr. Hall in the... What about the other witnesses? Well, sure, we'll depose them, but it's only with regard to the false information they gave and with regard to the interaction between Mr. Hall. So you're not going to ask any transactional questions about how this incident happened? No, if I'm in a deposition, sure. Of course you will. I'm going to do all of that. And how does that not interfere with the ongoing criminal prosecution? That's what motions in limine are. That's what objections are. You can flesh out to what extent those transactional things are going to be available. The question is, are we really saying, because that's what I seem to hear what's being suggested here, the fact that somebody may be giving a deposition in a civil case and that deposition is being used in a criminal case. That's going to do such violence to comedy that we have to use younger abstention and not let a valid civil rights federal 1983 claim go forward. Mr. Dunham, before we run out of time, can you address the jurisdictional question, please? Yes, I appreciate that question, Your Honor. I think the important distinction that's being made here is the Supreme Court has made it clear that when they mean conclusively or irrevocably decide the question, they mean that. And the reason why if abstention had been granted, and I can review that case, is because the courts in the other jurisdictions, both the Ninth Circuit and the other courts, say, well, res judicata will apply. In other words, there's a chance that while the federal claim is being stayed, that there's going to be something happening in the state case that res judicata applies and that will foreclose the ability for the plaintiff to pursue on the federal claim. Not the case if abstention is denied. There will be no res judicata, and as was pointed out by the Ninth Circuit, there's lots of cases where, for example, let me just give an example. There's a motion to a judge makes a ruling, whether it's a criminal case or a civil case, to suppress some evidence, a motion that when granted, it's a dispositive issue. It's going to dispose of the case. And we don't grant claims. I think you're misunderstanding the inquiry under Cohen. The second question is whether the issue, the abstention issue here, is conclusively decided. The issue of abstention has been conclusively decided by the district court in this case. She ruled against it. That's step two. Step one is, is this a separate issue from the merits? It is a separate issue from the merits. Step two is whether it's been conclusively decided. It has been. All the action in this case on the jurisdictional question is on step three, and that is whether the issue is unreviewable after final judgment, and that's the operative question that's before us here, whether the younger issue essentially evaporates if this case is allowed to proceed to final judgment without interlocutory review of the abstention. I see my red lights on. I assume you want me to answer. I do. Yes, thank you, Your Honor. As all the other circuits have indicated, final judgment could be issued in this case on the merits, and Mr. Watts, assuming that he loses in the trial court, can review that very issue. Frankly, I think the issue would be, well, we would turn around and say, well, at this point in time, it's moot. And the point is, but I think because under the mootness doctrine, it would be something that is likely to occur in the future. And so for that reason, it could be reviewed if Mr. Watts wanted to do it at that point, even though we would argue moot because it wouldn't be. Right. An appeal of an abstention denial at the end of the case is a request for an advisory opinion. But as I know the court's aware, you will grant some reviews under those circumstances, and this would be such a case where I think it would not be moot because of the possibility of it repeating itself. All right. Thank you very much. Mr. Baird. Thank you. So I see I have 37 seconds. I'm happy to speak to some points, but this is an important question. Do you have questions for me that I could answer before my time expires? Very good. Then let me, if I may, I'll just make a couple points since I have a few seconds. So opposing counsel mentioned the issue of res judicata. Let me back up. I just want to make clear that there's more going on with regards to potential interference between state and federal prosecutions than whether a deposition takes place, and I think that was clear. But I just want to mention, and this is particularly in the briefs, that res judicata could actually go from federal to the state prosecution. This criminal prosecution has been pending for three years. This case would already have had trial but for this younger abstention issue. I apologize for the time. And so if the federal court resolved first, there would be res judicata from the federal court to the state court, just something for your honors consideration. Thank you so much for your time. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.